**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **JOHN H. BEALE**, | ) Docket No.: 1:22-cv-203 |
| | ) |
| *Plaintiff,* | ) **COMPLAINT for:** |
| | ) |
| *v.* | ) **(1) Direct Copyright Infringement** |
| | ) **(2) Contributory Copyright Infringement** |
| **REDBUBBLE, INC., a Delaware** | ) **(3) Vicarious Copyright Infringement** |
| **corporation, and DOES 1-10,** | ) |
| | )  **JURY TRIAL DEMANDED** |
| *Defendants.* | ) |
| | ) |

---

Plaintiff John H. Beale ("Plaintiff" or "Mr. Beale"), by and through his attorneys, Finnerty Osterreicher & Abdulla, and as and for his Complaint alleges as follows:

## NATURE OF THE ACTION

1. This is an action for copyright infringement under Section 501 of the Copyright Act of the of the United States, 17 U.S.C. §101 *et seq*., as amended ("Copyright Act"), and arises out of Defendants' unauthorized reproduction and public display of copyrighted images owned and registered by Plaintiff, a professional photographer.

2. By this civil action Mr. Beale seeks damages for copyright infringement under the Copyright Act.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under the Copyright Act.

4. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and/or

1

28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction with respect to this action.

5.      This Court has personal jurisdiction over Defendants because Defendants transact business in New York and have placed into the stream of commerce and/or have derived commercial benefits from infringing products directed to residents of the State of New York and within the Western District of New York.

## PARTIES

6.      Plaintiff John H. Beale ("Mr. Beale" or "Plaintiff") is a citizen of the United States with a principal place of residence of 100 Cobblestone Drive, Pittsburgh, PA, 15239.

7.      On information and belief, Defendant Redbubble, Inc. ("Redbubble") is a corporation organized and existing under the laws of the state of Delaware with a principal place of business located at 111 Sutter Street, 17th Floor, San Francisco, California 94104.

8.      Redbubble does business within the Western District of New York and, on information and belief, has at all times material hereto operated a website at the URL www.redbubble.com.

9.      Mr. Beale is unaware of the names and true capacities of Defendants, whether individuals, corporate and/or partnership entities, named herein as DOES 1-10, inclusive, and therefore sues them by their fictitious names. Mr. Beale will seek leave to amend this complaint when their true names and capacities are ascertained.  As appropriate, Redbubble and DOES 1-10 are hereafter collectively referred to herein as "Defendants."

10.     On information and belief, each of the Defendants participated in and is in some manner responsible for the acts described in this Complaint and any damages resulting therefrom.

11.     On information and belief, Redbubble has acted in concert and participation with each DOE defendant with respect to the claims in the Complaint.

12.     On information and belief, Redbubble was and is empowered to act as the agent and/or servant of each DOE defendant, and, therefore, all acts alleged to have been done by any DOE defendant was authorized, approved, and/or ratified by Redbubble.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

13.     This lawsuit arises from Defendants' reproduction of copyrighted works created by Mr. Beale, including but not limited to the marketing, manufacture and distribution of clothing, accessories, and home goods that bear unauthorized reproductions of major elements of Mr. Beale's copyrighted works and/or constitute unauthorized derivative works (the "Infringing Products").

14.     At all times relevant hereto, Mr. Beale has been and still is the holder of the exclusive rights under the Copyright Act to reproduce, distribute, and display his work, shown below, to license the reproduction, distribution, and/or display of his work, and to reproduce, distribute, and display derivatives thereof.

**A.      John H. Beale**

15.     Mr. Beale has been a professional photojournalist for more than 4 decades who also teaches journalism. A copy of Mr. Beale's curriculum vitae is attached as **Exhibit A.**

16.     Mr. Beale has received numerous accolades and he has been recognized with numerous regional, state, and national professional journalism awards. *Id.*

**B.      Mr. Beale's Iconic Fred Rogers-Officer Clemmons Photograph.**

17.     In 1969 and at a time when Black Americans were still largely excluded from public swimming pools, Fred Rogers, in his show *Mister Rogers' Neighborhood*, invited

"Officer Clemmons," a Black police officer played by actor Francois Clemmons, to join him and cool his feet in a child's wading pool.  *See* https://misterrogers.org/videos/sharing-a-swimming-pool/.

18.     The three-minute scene was as simple as it was poignant.  Officer Clemmons initially declined Mister Rogers' offer, stating that while it looked very enjoyable, he did not have a towel.  *Id*.  In response, Mister Rogers immediately offered to share his.  *Id*.  Accepting the offer, Officer Clemmons then took off his boots and socks, rolled up his pant legs, and placed his feet in the water. The camera then cut to a close-up shot of their feet side by side, showing Mister Rogers gently spraying Officer Clemmons' feet before handing the hose to his friend.  *Id*. When it was time for Officer Clemmons to leave, Mister Rogers, as promised, handed to his friend his own towel which the officer used to dry his feet.  *Id*. Mister Rogers then used the same towel to dry his own feet. *Id*.  The historic scene is regarded as a watershed moment in television and the movement toward racial equality.  *See, e.g.,* https://www.today.com/popculture/how-mister-rogers-pool-moment-broke-race-barriers-t183635; https://www.biography.com/news/mister-rogers-officer-clemmons-pool;

19.     Fast forward twenty-four years to early 1993, when, on information and belief, Fred Rogers, in honor of what was to be "Officer Clemmons'" last appearance on the show, decided to reprise the iconic scene and, as fate would have it, the *Los Angeles Times* ("*The Times*") was preparing to do a profile story on Fred Rogers.

20.     Given that *Mister Rogers' Neighborhood* was produced out of WQED's studios in Pittsburgh and Mr. Beale was a well-established Pittsburgh-area photojournalist, *The Times* reached out to Mr. Beale to photograph Fred Rogers at WQED, with the understanding that Mr. Beale would own any photos taken.

21.     Mr. Beale accepted *The Times*' offer.

22.     The only other photographer in the studio that day was Terry Clark, a photographer who, on information and belief, worked for the show and was preparing to take posed black and white photographs of Fred Rogers and Francois Clemmons.

23.     While Mr. Clark was taking posed shots of the pair, Mr. Beale worked around him, taking candid photos of the two men interacting with each other, deciding for himself the unique angles to shoot, the lenses and format of the cameras to use, the speed and type of film to use, and which decisive moments to capture.

24.     Mr. Beale chose the camera angle, shooting at a slight angle to Rogers and Clemmons, to highlight both the space between their bodies and their facial expressions. He also chose the focal length of the lens, the aperture setting, and shutter speed to achieve his desired effect.  And he shot the photograph using color film, rather than black & white film. In other words, some of Mr. Beale's creative choices dealt with the rendition of the subject, *i.e.*, not what was depicted, but how it was depicted.

25.     The images captured by Mr. Beale in 1993 were no less memorable than those broadcast in 1969 and included the following image ("the Photograph"):



(Note the orientation of the picture, with Officer Clemmons on the left and Fred Rogers on the right. Fred Rogers and Francois Clemmons positioned themselves this way as that was how they were seated in 1969.)

**C.      Registration, Licensing and Publication.**

26.     The Photograph was not immediately published. Rather, *The Times* determined instead to publish a picture of Fred Rogers alone with just his feet in the pool (instead of one with both Mister Rogers and Officer Clemmons).

27.     In 2017, Mr. Beale was contacted by Tremolo Productions, a film production company that was producing what would become the critically acclaimed 2018 Fred Rogers documentary "Won't You Be My Neighbor."

28.     Tremolo Productions purchased from Mr. Beale a limited, non-exclusive license to use the Photograph to promote the film and on the back cover of the DVD.

29.     In reproducing the Photograph and publishing it in 2018, Tremolo Productions "flipped" the image resulting in Mister Rogers and Officer Clemmons being reversed:



30.     Both versions of the Photograph are subject to copyrights registered within five years of initial publication.

31.     Specifically, on December 1, 2019, Mr. Beale applied for a copyright registration for the work "Mister Rogers and Francois Clemmons" as published by Tremolo in 2018. This application was granted by the United States Copyright Office on February 7, 2020.   *See* Certificate of Registration, Copyright Registration Number VA 2-189-607, attached as **Exhibit B**.

32.     On July 11, 2020, Mr. Beale applied for registration of the original image titled "Mister Rogers and Francois Clemmons With Child's Swimming Pool." That application was

granted July 29, 2020. *See* Certificate of Registration, Copyright Registration Number VAu 1-401-456, attached as **Exhibit C**.

33.     In 2019, Mr. Beale was approached by Catapult Publishing, publisher of Francois S. Clemmons' memoir "*Officer Clemmons*."  Catapult purchased a limited, non-exclusive license to use the "reversed" version of the Photograph for the cover of Mr. Clemmons' memoir.     *See, e.g.,*   https://www.amazon.com/Officer-Clemmons-Memoir-Fran%C3%A7ois/dp/1948226707.  On information and belief, *Officer Clemmons* was released May 5, 2020.

34.     Mr. Beale has limited licensing and use of the Photograph to only a select group of entities.  He has never granted a license or otherwise authorized the use of the Photograph on products such as apparel, accessories, decals, or home goods, nor has he ever granted any Defendant a license to use or reproduce the Photograph or publish derivatives thereof.

**D.     Post-registration events and the co-opting of the Photograph**.

35.     On information and belief, George Floyd was murdered by Minneapolis police on May 25, 2020.  This act – coupled with and layered atop of the many historic abuses of people of color by the police – resulted in an outpouring of public dissent, civil unrest, and, in some cases, extreme levels of disunity between the public and law enforcement. From the fire of that maelstrom, the Photograph emerged and began circulating as an iconic symbol for unity, kindness, peace, and racial harmony.

36.     However, except for Tremolo and Catapult and a limited number of other licensees, no one – including but not limited to Redbubble and DOES 1-10 – sought or obtained from Mr. Beale a license to use the Photographs for any purpose, let alone commercial gain.

E.    **Redbubble.**

37.    On information and belief, Redbubble is engaged in the promotion, marketing and sale of clothing products, accessories, and other goods ("Products") through its highly interactive website https://www.redbubble.com, which is accessible to consumers throughout the world including those within this judicial district.

38.    On information and belief, Redbubble: (i) makes available through its interactive website software and other tools which are used to design Infringing Products; (ii) maintains and/or otherwise provides a online storefronts through which Infringing Products can be and are sold; (iii) is engaged in the marketing of Infringing Products; (iv) provides logistical support, technical support, and payment processing for the sale and return of Infringing Products; and (v) manufactures or causes the manufacture of Infringing Products, including Infringing Products that are sold and shipped to customers within the Western District of New York.

39.    On information and belief, Redbubble invites and permits users to upload to the company's website photographs, images, artwork, and other designs ("Photos and Images") with the intent that such images will be reproduced on Products that are offered for retail sale.

40.    On information and belief, Redbubble: (i) digitally reproduces such Photos and Images on its website by superimposing same onto a variety of stock Redbubble images Products offered for sale through redbubble.com; and (b) causes such Photos and Images to be physically reproduced onto Products purchased by users of redbubble.com by directing and/or controlling the manufacture of such products.

41.    The Photos and Images which have been reproduced by Redbubble include the Photograph.

**F.**     <u>**Redbubble infringes upon Beale's intellectual property rights.**</u>

42.     A significant portion of the illegal use of Mr. Beale's intellectual property arises in the context of the marketing, manufacture and distribution of Infringing Products by Redbubble that include a reproduction of the Photograph or major elements thereof.

43.     Such infringement began, on information and belief, in mid-2020 and after the effective date of the copyright registrations.

44.     Sample screen shots of Redbubble's website displaying dozens of Infringing Products are reproduced below:











45.     Comparing the above screenshots to the Photograph, the Infringing Products being marketed and sold by Defendants and which incorporate reproductions of significant elements/portions of the Photograph bear a substantial similarity, and are strikingly and probatively similar, to Mr. Beale's protected work.

46.     The illegal use of Mr. Beale's intellectual property also arises in the context of the marketing, manufacture and distribution of Infringing Products which include and/or incorporate unauthorized derivative works.

47.     Such infringement began, on information and belief, in mid-2020 and after the effective date of the copyright registrations.

48.     Sample screen shots of Redbubble's website displaying dozens of Infringing Products which incorporate unauthorized derivative works are reproduced below:

14













49.     Comparing the above screenshots to the Photograph, the Infringing Products being marketed and sold by Defendants and which incorporate reproductions of significant elements and portions of the Photograph in the form of unauthorized derivative works bear a substantial similarity, and are strikingly and probatively similar, to Mr. Beale's protected work.

50.     Redbubble is advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from the sale of products which include unlicensed exact reproductions of the Photograph as well as derivatives thereof.

51.     Beale has not granted a license to Redbubble or any other Defendant, nor has he given to Redbubble or any other Defendant permission to use intellectual property belonging to him, including the Photograph or any derivatives thereof.

52.     On information and belief, Redbubble's infringement is knowing and willful.

53.     On information and belief, Redbubble has profited from its unauthorized use of Beale's intellectual property through the sale of the Infringing Products.

**G.        Redbubble was aware that it put Infringing Products into the stream of commerce.**

54.      In mid-2020, following the murder of George Floyd and in the wake of the Black Lives Matter movement and protests, Mr. Beale observed that the Photograph was being used without license for commercial purposes, typically in the context of marketing Infringing Products.

55.      Mr. Beale accordingly took steps to protect his intellectual property rights, beginning, through counsel, with direct requests to individual infringers demanding the removal of Infringing Products from vendor platforms including, for example, Etsy, and various individual websites.

56.      In 2021 those efforts were expanded to include "fulfilment vendors" including but not limited to Redbubble.

57.      Specifically, on April 15, 2021, Redbubble was put on notice that it was offering for sale scores of Infringing Products in violation of Mr. Beale's intellectual property rights.  A true and correct of the April 15 correspondence is attached as **Exhibit D**.

58.      In the April 15 letter, Redbubble was provided not only with a link to the Photograph, but also a nearly 8-page list of "links" (or URLs) to Infringing Products as found for sale on redbubble.com.  *See* Exhibit D.

59.      This, however, did not stop the infringing conduct from occurring.  While the company's "Content Operations Team" responded by email on May 7 to the April 15 letter (self-servingly stating that the infringing content had been removed), the company did not specify what measures, if any, it had taken or was willing to undertake to remove or prevent the sale of Infringing Products going-forward.  A true and correct copy of the May 7 email correspondence is attached as **Exhibit E**.

60.     Indeed, by its response – and despite having been put on notice that it was marketing and selling Infringing Products – Redbubble sought instead to put the onus on Mr. Beale to engage in a never-ending "whack-a-mole" obligation to constantly search for, identify and request the removal of infringing content,  all while the company continued to market, sell, arrange to produce, and ultimately profit from, Infringing Products.

61.     Furthermore, despite having been put on notice, Redbubble did not remove all the infringing listings.

62.     On June 3, 2021, there remained for sale on redbubble.com certain Infringing Products which had been specifically flagged in the April 15 correspondence.  *See* June 3, 2021, correspondence to Redbubble, a true and correct copy of which is attached as **Exhibit F**.

63.     In addition, on June 5, 2021, Mr. Beale was able to purchase from Redbubble an Infringing Product (specifically, a sticker emblazoned with a derivative work).  A true and correct copy of the June 5 order confirmation as well as a photograph of the Infringing Product and "Redbubble" delivery packaging is attached as **Exhibit G**.

64.     Redbubble responded to the June 3 correspondence on June 17, 2021 (copy attached as **Exhibit H**), placing responsibility for the infringements on "third-party sellers who take sole responsibility for the images they upload to their profiles and for the printed products they sell to their customers" and claiming that "Redbubble itself does not create, own, sell, manufacture, print, promote, ship or distribute any of the images or products sold or offered for sale through our platform."  *Id*.

65.     Redbubble's position as expressed in its June 17 correspondence is, on information and belief, factually unsupportable.

66.     As shown above, products offered for sale on redbubble.com are promoted by Redbubble on Redbubble's website and, on information and belief, through emails and other electronic advertising sent by or on behalf of Redbubble.

67.     In addition, on information and belief, Redbubble itself provides the so-called independent artists with stock models, stock images, and a list of predetermined (by Redbubble) products on which images may be sold.

68.     Moreover,   on   information   and   belief,   Redbubble   selects   the manufacturer/fulfiller used to produce the product, which is then shipped in Redbubble packaging.

69.     Furthermore, on information and belief, Redbubble determines the base price of the product being sold to make a profit after accounting for fees, manufacturing costs, and operational costs, and Redbubble is responsible for collecting payment, handling returns, and has discretion with regard to the disposal of returned and unwanted items.

70.     Order confirmations for items purchased from the company are sent via email from Redbubble, not the "third party sellers." *See* **Exhibit G and Exhibit I**.  These Redbubble communications, labeled "operational email[s] from Redbubble," inform the customer that the product will be printed and shipped, provide an estimated delivery date, and direct customers to contact Redbubble with any customer service, shipping, or product quality issues. *Id.*

71.     Indeed, on September 17, 2021 – a full five months after being put on notice of Infringing Products – Mr. Beale was able to order from Redbubble a T-shirt which included a reproduction of the principal elements of the Photograph.  *See* September 17, 2021, Order screen shot, shipping confirmation, and photographs of the packaging and product, true and correct copies of which are attached as **Exhibit J**.

72.     The product ordered by Mr. Beale was shipped to his home address in Pittsburgh and arrived in "REDBUBBLE" packaging:



73.     And on September 30, 2021, counsel for Mr. Beale also was able to order from Redbubble a T-shirt which included a reproduction of the principal elements of the Photograph. *See* September 30, 2021, Order Confirmation email from Redbubble, a true and correct copy of which is attached as Exhibit I, *and see* paragraph 74, *infra*.   Consistent with the estimate provided in the Order Confirmation (Exhibit I), the order was delivered to 19 Winston Road, Buffalo, New York (an address within this Court's jurisdiction) on October 7, 2021.

74.     As shown below, counsel's order also was shipped in "REDBUBBLE" packaging and even included a "RB" sticker:



75.    Redbubble is therefore directly involved in the sale, manufacturing, printing, promotion, shipping, and distribution of the Infringing Products offered for sale on its platform.

76.    Further investigation in September and October 2021 revealed that despite having been given notice in April and June, Redbubble continued to market and advertise for sale Infringing Products.

77.     Accordingly, on October 21, 2021, Redbubble was advised (yet again) that it was continuing to sell Infringing Products.  A true and correct copy of the October 21 correspondence is attached as **Exhibit K**.  The October 21 correspondence identified an additional 9 pages of specific redbubble.com URLs listing for sale scores of additional Infringing Products.  *See* Exhibit L.

78.     Infringing Products have been and continue to be displayed and promoted on Redbubble's website, and Redbubble's website was and is configured so that a search for "Mr. Rogers," "Officer Clemmons" and "pool" continues to lead to Infringing Products. *See, e.g.*     https://www.redbubble.com/i/t-shirt/Mr-Rogers-and-Officer-Clemmons-pool-by-BryanWhipple/94852209.WFLAH.XYZ

### FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

79.     Mr. Beale re-alleges and incorporates herein by reference each and every allegation set forth above.

80.     Mr. Beale is sole owner of the copyrights in original works that are fixed in a tangible medium of expression.

81.     Mr. Beale has complied in all respects with the Copyright Act and has secured the exclusive rights and privileges in and to the original expression in the Photographs.

82.     Redbubble and DOES 1-10 had access to Beale's copyrighted works as established by, among other things, the widespread availability of Infringing Products offered for sale by Defendants on www.redbubble.com.

83.     Redbubble and the other Defendants have produced, reproduced, prepared derivative works based upon, distributed, and publicly displayed Beale's protected work and derivatives of Mr. Beale's protected work without his consent.

24

84.     Defendants' acts violate Beale's exclusive rights under the Copyright Act including Beale's exclusive rights to produce, reproduce, and distribute copies of his work, to create derivative works, and to publicly display his work.

85.     Defendants' acts have been undertaken knowingly, willfully, and purposefully, in disregard of and with indifference to Mr. Beale's rights and with the intent to financially gain from Beale's protected copyrighted work.

86.     As a direct and proximate result of Defendants' infringement of Plaintiff's copyright and exclusive rights, Mr. Beale, pursuant to 17 U.S.C. §504(b), is entitled to actual damages and Defendants' profits in an amount to be proven at trial.

87.     Alternatively, Mr. Beale, pursuant to 17 U.S.C. § 504(c), is entitled to statutory damages of up to $150,000 per copyright for Defendants' willful infringement.

88.     Mr. Beale is further entitled to his attorney's fees and full costs pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF
(Contributory Copyright Infringement)

89.     Mr. Beale re-alleges and incorporates herein by reference each and every allegation set forth above.

90.     Redbubble has been and continues to be aware of— and has been and continues to contribute to — the infringement of Mr. Beale's copyrights on its site.

91.     Redbubble creates and distributes and/or arranges for the creation and distribution of Infringing Products to the end consumer and facilitates the financial transactions.

92.     Redbubble has permitted and/or remained blind to the infringement of Mr. Beale's copyrights on its website and on products it causes to be created and distributed to consumers.

93.     Mr. Beale has been damaged by and Redbubble has profited from Redbubble's contributory copyright infringement.

94.     To remedy Redbubble's contributory copyright infringement, Mr. Beale is entitled to the remedies set forth above for direct copyright infringement.

## THIRD CLAIM FOR RELIEF
(Vicarious Copyright Infringement)

95.     Mr. Beale re-alleges and incorporates herein by reference each and every allegation set forth above.

96.     On information and belief, Redbubble enjoys a direct financial benefit from the copyright infringement on its website.

97.     On information and belief, Redbubble retains a percentage of every sale of every product displayed on the site, including but not limited to Infringing Products.

98.     On information and belief, the availability of Infringing Products on Redbubble's website serves to draws customers to the site, which, in turn, leads to the sale of non-infringing products and further profits and revenues to Redbubble.  Such sales are the direct result of Defendants display of Infringing Products.

99.     Redbubble has the ability and means to stop or limit the infringement of Mr. Beale's intellectual property rights and the practical ability to do so.

100.    Redbubble has the ability and means to monitor its site for infringing designs and the right to remove them.

101.    Redbubble failed to stop the marketing and sale of Infringing Products.

102.    On information and belief, Redbubble has profited and continues to profit from the sale of Infringing Products.

103.    On information and belief, Redbubble has profited and continues to profit from the sale of non-infringing products to buyers who were drawn in by the Infringing Products.

104.    On information and belief, Redbubble has failed to exercise its right and ability to supervise persons within their control to prevent infringement and did so with intent to further its financial interests.

105.    Mr. Beale has been damaged by and Redbubble has profited from Redbubble's vicarious copyright infringement.

106.    To remedy Redbubble's vicarious copyright infringement, Mr. Beale is entitled to the remedies set forth above for direct copyright infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1.      That Defendants be adjudged to have infringed upon Mr. Beale's copyrights in the Photograph in violation of 17 U.S.C. §§ 106 and 501;

2.      For an order requiring the destruction of all Infringing Products in the possession, custody, and control of Defendants;

3.      For an order requiring the immediate cessation of the marketing, advertising, promotion, sale, manufacturing, and/or distribution of Infringing Products;

4.      For an accounting of all revenues obtained by Defendants from sales of the Infringing Products together with an order that Redbubble set aside an amount equivalent to all such revenues in a constructive trust for the benefit of Mr. Beale;

5.      For an award to Plaintiff of either: (a) actual damages and Defendants' profits,

gains, or advantages in an amount to be proven at trial; or (b) statutory damages of up to

$150,000 per copyright for Defendants' willful infringement;

6.      For pre-judgment interest on all damages awarded by this Court;

7.      For reasonable attorney's fees and costs of suit incurred herein; and

8.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of

Civil Procedure.

**Dated**: March 14, 2022                    **FINNERTY OSTERREICHER & ABDULLA**

                                             /s/ Karim A. Abdulla

                                             Karim A. Abdulla, Esq.
                                             70 Niagara St., Suite 411
                                             Buffalo, NY 14202
                                             Tel: 716-340-2200
                                             Fax: 716-340-2300
                                             Email: kaa@foalegal.com